**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Adalinda Garcia; Levis Barrientos; Jonathan Barrientos; Sterling Barrientos; and Ronald Balbuena, *on behalf of themselves and all others similarly situated*,<br><br>　　　　　　　　　　　　*Plaintiffs,*<br><br>- against -<br><br>ABM Industry Groups, LLC; ABM Industries Incorporated,<br><br>　　　　　　　　　　　　*Defendants.* | Action No.<br><br>**FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiffs, Adalinda Garcia, Levis Barrientos, Jonathan Barrientos, Sterling Barrientos, and Ronald Balbuena, (collectively, "Plaintiffs"), on behalf of themselves and other similarly situated employees, as the class representatives, by and through their undersigned attorney, Mohammed Gangat, Esq., as and for their Complaint against Defendants, ABM Industry Groups, LLC, and ABM Industries Incorporated, (collectively, "ABM", or "Defendants"), allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1.　　This action is brought as a collective action pursuant to 29 U.S.C. §216(b) and as a state-law class action under Fed. R. Civ. P. 23(b)(3).

2.　　The core of Defendants' violations revolves around their systematic failure to keep accurate time records, and their failure to pay employees based on the actual time worked, including any travel time between workplaces, but rather based upon the fixed number of hours for particular job assignments. In short, if an employee was sent to clean a site or do some other tasks on that site, ABM paid that employee for the fixed number of hours allocated by Defendants, regardless of the actual time required for the employee to perform his or her job duties.

3.　　Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§ 201, et seq. ("FLSA"), they and a proposed class of others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; (5) compensatory damages for retaliatory termination; and (6) attorneys' fees and costs.

4.      Plaintiffs allege that, pursuant to the New York Labor Law ("NYLL"), they and a proposed class of others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) damages for failure to give required notices and wage statements, (4) liquidated damages and civil penalties, pursuant to the NYLL and New York State Wage Theft Prevention Act, (5) prejudgment and post-judgment interest, (6) compensatory damages for retaliatory termination, and (7) attorneys' fees and costs.

5.      Plaintiffs further allege that, in express violation of the FLSA and NYLL, Defendants failed to pay for any travel time for an employee's travels between work sites, nor did Defendants pay for necessary travel expenses incurred by employees (i.e., mileage).

6.      The relevant statutory period for Plaintiffs' federal claims under the FLSA is the three-year period preceding the date of the filing of the complaint, and the statutory period applicable to Plaintiffs' state law claims under the NYLL is the six-year period preceding the date of the filing of the complaint.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

**A.    Plaintiffs**

9.    The named Plaintiffs are residents of Spring Valley, in Rockland County, New York.

10.    At all relevant times, Defendants continuously employed Plaintiffs to work as non-exempt employees.

11.    At all relevant times, Plaintiffs were required by Defendants to clean several Chase Bank branches in Rockland County and nearby counties in upstate New York.

12.    At all relevant times, the work performed by Plaintiffs was essential to the business owned and operated by Defendants.

**B.    Defendants**

13.    Defendant, ABM Industries Incorporated ("ABM Inc."), has its corporate office headquarters located at  One Liberty Plaza, 7th Floor, New York, NY 10006.

14.    ABM Inc. operates through its subsidiaries as a leading provider of integrated facility solutions, including janitorial services to businesses in New York. ABM Inc. has created a maze of wholly-owned and closely controlled business units and subsidiaries in an attempt to improperly insulate itself from liability for wage and hour laws.

15.    Upon information and belief, ABM Inc.'s Human Resources department operates under a structure that involves centralized and standardized hiring and training practices.

16.    Defendant, ABM Industry Groups, LLC, is a foreign limited liability company, organized and existing under the laws of the State of New York, with a process service address of 28 LIBERTY ST., NEW YORK, NY 10005.

17.    Defendants, ABM Inc. and ABM Industry Groups, LLC, hold themselves out as a single enterprise and single entity despite the technical existence of separate corporate structures. First, ABM Industry Groups, LLC, is a mere division of ABM Inc. Second, there is a close, synergistic

relationship between ABM Inc. and ABM Industry Groups, LLC. Defendants maintain a single website in which it promotes "ABM" without regard to its corporate form. The same is even true of Defendants' website address – https://www.abm.com. The content of the website confirms that ABM Industry Groups, LLC is a mere division of ABM Inc., stating: "ABM Industries Incorporated, which operates through its subsidiaries, was founded in 1909.", *available at* https://www.abm.com/about/ (last visited October 20, 2021). The website further boasts, without regard to corporate form, that: "ABM's comprehensive capabilities include janitorial, electrical & lighting, energy solutions, facilities engineering, HVAC & mechanical, landscape & turf, mission critical solutions and parking, provided through stand-alone or integrated solutions. ABM provides custom facility solutions in urban, suburban and rural areas to properties of all sizes – from schools and commercial buildings to hospitals, data centers, manufacturing plants and airports." *Id.*

18.    ABM engages in unified marketing image and corporate branding, as its corporate insignias, trademarks and logos appear uniform regardless of corporate form, as shown by its website. And, as represented on the website, the $6.4-billion in revenue, 140,000+ employees, and 350-offices are all attributable to the single company known as "ABM" of which ABM Industry Groups, LLC is a mere instrumentality or adjunct of ABM Inc. and part of a single, unified enterprise.

**C.    ABM Inc. exercises complete control over ABM Industry Groups, LLC.**

19.    The Annual Report (Form 10-K) filed by ABM Inc. with the United States Securities and Exchange Commission for the fiscal year ended October 31, 2020 states: "ABM Industries Incorporated . . . operates through its subsidiaries (collectively referred to as 'ABM,' 'we,' 'us,' 'our,' or the 'Company') . . ."

20.    The Annual Report also states that "janitorial" services are part of its largest reportable segment. The Annual Report lists a single management team consisting of 8-executive officers "of ABM," which is defined to include its subsidiaries and, thus, includes ABM Industry Groups, LLC.

(identifying Scott Salmirs as the "President and Chief Executive Officer of ABM . . ."; identifying Earl R. Ellis as the "Executive Vice President and Chief Financial Officer of ABM . . ."; identifying Andrew D. Block as the "Executive Vice President and Chief Human Resources Officer of ABM . . .").

21.    Upon information and belief, Defendants exercise control over the terms and conditions of their employees' employment, including Plaintiffs' employment, in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) otherwise affect the quality of the employees' employment.

22.    Upon information and belief, at all times relevant to the allegations in this Complaint, Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that, at all relevant times, it (i) had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) had an annual gross volume of sales of not less than $500,000.

23.    Defendants knowingly and willfully failed to pay Plaintiffs and other similarly situated employees their lawfully earned minimum wages in direct contravention of the FLSA and NYLL.

24.    Defendants knowingly and willfully failed to pay Plaintiffs and other similarly situated employees their lawfully earned overtime compensation in direct contravention of the FLSA and NYLL.

25.    Defendants knowingly and willfully failed to accurately provide Plaintiffs and other similarly situated employees their wage notices and wage statements in direct contravention of the NYLL and New York Wage Theft Prevention Act.

26.    Defendants knowingly and willfully failed to pay for travel time for Plaintiff's travels

between work sites, and failed to reimburse Plaintiffs' necessary travel expenses, in indirect violation of the FLSA and NYLL.

## STATEMENT OF FACTS

27.      Plaintiffs at all relevant times were covered employees within the meaning of the FLSA and NYLL.

### *Plaintiff Adalinda Garcia' Employment*

28.      In the summer of 2018, Plaintiff Adalinda Garcia ("Adalinda") was hired by Kenya, a manager of ABM, to work as a janitor at certain Chase Bank branches located in Rockland County, New York State. Adalinda was terminated by Kenya in February 2019. Later, in or about April 2020, Adalinda was rehired by ABM, and she continuously worked as a janitor at certain Chase Bank branches located in Rockland County, New York State, until she was terminated again by Kenya in August 2020.

29.      During her employment, Adalinda's job duties consisted of taking out trash, sweeping and mopping floors, cleaning bathrooms, vacuuming, and cleaning windows and furniture. Adalinda was directly supervised by Kenya and another manager, Claudia.

30.      During her employment, Adalinda was not given fixed start and end times for her work shifts. Instead, she was instructed by Kenya that she could start cleaning at any time, after the bank branches closed. She was given keys to the bank branches that she needed to clean and would enter the bank branches around 6:00 p.m. and start cleaning.

31.      At all relevant times, Adalinda had to drive to different Chase Bank branches on each workday, since she was required by ABM to clean different bank branches. She spent about $60.00 per week on gas and other car-related expenses, but she never received any reimbursement for these expenses.

32.      Additionally, Adalinda was never provided with any cleaning supplies and tools. She

had to purchase cleaning supplies and a vacuum, and never received any reimbursement for them. Based on her best recollection, she spent about $600.00 purchasing cleaning supplies, and about $300.00 purchasing a vacuum.

*(1) Time Period of the Summer of 2018 through February 2019*

33.     At the beginning of Adalinda's employment in 2018, she was told by Kenya that she would need to work four days a week, about 25.5 hours per week, and be paid at $11.00 per hour.

34.     However, she in fact ended up working six days a week, from Monday to Saturday during this period. She was required to clean four Chase Bank branches from Monday to Saturday. The branch locations include: (1) 67 Lafayette Street, Suffern, NY 10901; (2) 1 S Airmont Rd., Tallman, NY 10982; (3) 410 Route 59, Monsey, NY 10952; (4) 405 W Rte 59, Monsey, NY 10952.

35.     Based on her best recollection, she worked from 6:00 p.m. to between 12:00 a.m. and 12:30 a.m. per day. On average, it took Adalinda around 36-38 hours per week to finish her job duties.

36.     However, Adalinda was in fact compensated about 18.50 hours per week. In 2018, Adalinda was paid at an hourly rate of $11.00 multiplied by 18.50 hours per week, amounting to $203.50 per week. In 2019, she was paid at an hourly rate of $12.00 multiplied by 18.50 hours per week, amounting to $222.00 per week.

37.     Therefore, Adalinda was consistently underpaid and was only paid for at least half of the hours she worked. She raised these concerns several times which eventually led to her dismissal in February 2019.

38.     At some point in February 2019, Adalinda showed up to work, but found someone else was there cleaning the banks. Then Kenya asked Adalinda to return the bank keys and terminated her.

*(2) Time Period of April 2020 through August 2020*

39.     From April 2020 to August 2020, Adalinda was rehired by ABM to clean three Chase Bank branches from Monday through Saturday. Two of the banks were bigger than the banks she used

to clean from 2018 to 2019.

40.     Based on her best recollection, she worked from 6:00 p.m. to about 12:00 a.m. per day. On average, it took Adalinda around 36 hours per week to finish her job duties.

41.     However, she was in fact compensated about 18 hours per week. In 2020, she was paid at an hourly rate of $13.00 multiplied by 18 hours a week, amounting to $234.00 per week.

42.     Adalinda had asked Kenya at least three times about her undercounting of hours. But Kenya would stall about it and say that she would ask her boss about it. Later, Kenya told Adalinda that she would be compensated 24 hours per week to reflect more hours she actually worked. However, ABM continued paying Adalinda 18 hours per week at the hourly rate of $13.00, until she was terminated.

43.     Before Adalinda was terminated, she told Kenya that if she wouldn't get paid for the hours she actually worked, she would leave the job. Shortly after this occurrence, and out of nowhere, Kenya asked Adalinda to return the bank keys and fire her again in August 2020, because ABM had found a replacement for Adalinda.

***Plaintiff Levis Barrientos' Employment***

44.     In January 2019, Plaintiff Levis Barrientos ("Levis") was hired by Kenya, a manager of ABM, to work as a janitor at certain Chase Bank branches located in Rockland County, New York State. Levis was wrongfully terminated by David, a manager of ABM, on or about September 2, 2020.

45.     During his employment, Levis's job duties consisted of taking out trash, sweeping and mopping floors, cleaning bathrooms, vacuuming, and cleaning windows and furniture. Levis was directly supervised by Kenya, and later around May 2020, was directly supervised by David, the manager of ABM.

46.     During his employment, Levis was not given a fixed start and end times of his work shifts. Instead, he was instructed by Kenya that he could start cleaning at any time, after the bank

branches closed. He was given keys to the bank branches which he needed to clean and would enter the bank branches around 6:00 p.m. and start cleaning.

47.     During his employment, Levis had to drive to four different Chase Bank branches on each workday, since he was required by ABM to clean different bank branches. He spent about $60.00 per week on gas and other car-related expenses, but he never received any reimbursement for these expenses.

48.     Additionally, he was never provided with any cleaning supplies and tools. He had to purchase cleaning supplies, and never received any reimbursement for them. Based on his best recollection, he spent about $100.00 purchasing cleaning supplies.

49.     During his employment, Levis was required to clean four Chase Bank branches from Monday to Saturday. The branch locations included: (1) 269 N Main St, Spring Valley, NY 10977; (2) 719 W Nyack Rd, West Nyack, NY 10994; (3) 316 S Main St, New City, NY 10956; and (4) 2 New Hempstead Rd, New City, NY 10956.

50.     On average, Levis worked from 6:00 p.m. to between 10:00 p.m. and 10:30 p.m.

51.     However, based on his best recollection, he was compensated for about 18.50 hours per week, while he actually worked between 24 and 27 hours per week. In 2019, he was paid at an hourly rate of $12.00 multiplied by 18.50 hours per week, amounting to $222.00 per week. In 2020, he was paid at an hourly rate of $13.00 multiplied by 18.50 hours per week, amounting to $240.50 per week.

52.     During the Covid-19 pandemic, Levis was never provided with any personal protective equipment, and he contracted Covid-19. However, ABM did not give him any days off, and Levis was required to clean the bank branches even though he had not fully recovered from Covid-19.

53.     Before Levis was terminated, he complained to his supervisor about being underpaid. However, his complaints were never addressed, and he was terminated instead.

*Plaintiff Jonathan Barrientos' Employment*

54.    In June 2018, Plaintiff Jonathan Barrientos ("Jonathan") was hired by Kenya, a manager of ABM, to work as a janitor at certain Chase Bank branches located in Rockland County, New York State. Jonathan was terminated by David, a manager of ABM, in May 2020.

55.    During his employment, Jonathan's job duties consisted of taking out trash, sweeping and mopping floors, cleaning bathrooms, vacuuming, and cleaning windows and furniture. Jonathan was directly supervised by Kenya, and later around May 2020, was directly supervised by David, the manager of ABM.

56.    During his employment, Jonathan was not given fixed start and end times for his work shifts. Instead, he was instructed by Kenya that he could start cleaning at any time after the bank branches closed. He was given keys to the bank branches that he needed to clean and would enter the bank branches around 6:00 p.m. and start cleaning.

57.    During his employment, Jonathan had to drive to different Chase Bank branches on each workday, since he was required by ABM to clean different bank branches. He spent about $100.00 per week on gas and other car-related expenses, but he never received any reimbursement for these expenses.

58.    Additionally, he was never provided with any cleaning supplies and tools. He had to purchase cleaning supplies and a vacuum, and never received any reimbursement for them. Based on his best recollection, he spent about $500.00 purchasing cleaning supplies, and about $300.00 purchasing a vacuum cleaner.

59.    From June 2018 to about March 2020, Jonathan was required to clean five Chase Bank branches from Monday to Saturday. The branch locations included: (1) 333 NY-303, Orangeburg, N.Y. 10962; (2) 67 Lafayette Ave, Suffern, N.Y. 10901; (3) 1 E. Central Ave, Pearl River, N.Y. 10965; (4) 56 Lake Rd, Congers, N.Y. 10920; and (5) 241 Orange Turnpike Route 17, Tuxedo Park,

N.Y. 10987.

60.    On average, he worked from 6:00 p.m. to between 12:00 a.m. and 2:00 a.m. However, based on his best recollection, he was compensated about 38 hours per week, while he actually worked about 42 hours per week. During this period, he was paid an hourly rate of $13.00 multiplied by 38 hours per week, amounting to $494.00 per week.

61.    From April 2020 to May 2020, Jonathan was required to clean three Chase Bank branches from Monday to Saturday. On average, he worked from 6:00 p.m. to between 10:00 p.m. and 11:00 p.m. However, based on his best recollection, he was compensated for about 36 hours per week, instead of the hours he actually worked. During this period, he was paid at an hourly rate of $13.00 multiplied by 36 hours per week, amounting to $468.00 per week.

62.    Before Jonathan was terminated, he complained to his supervisor that he was not paid for all the hours he worked. Later, he contracted Covid-19 and had to stop working. After he recovered in about 2 weeks, he was terminated.

### Plaintiff Sterling Barrientos' Employment

63.    In August 2019, Plaintiff Sterling Barrientos ("Sterling") was hired by Kenya, a manager of ABM, to work as a janitor at certain Chase Bank branches located in Rockland County, New York State. Sterling was terminated in February 2020.

64.    During her employment, Sterling's job duties consisted of taking out trash, sweeping and mopping floors, cleaning bathrooms, vacuuming, and cleaning windows and furniture. Sterling was directly supervised by Kenya.

65.    During her employment, Sterling was not given fixed start and end times for her work shifts. Instead, she was instructed by Kenya that she could start cleaning at any time after the bank branches closed. She was given keys to the bank branches which she needed to clean and would enter the bank branches around 6:00 p.m. and start cleaning.

66.    During her employment, Sterling had to drive to different Chase Bank branches on each workday, since she was required by ABM to clean different bank branches. She spent about $35 per week on gas fees and other car-related expenses, but she never received any reimbursement for these expenses.

67.    During her employment, Sterling had to purchase cleaning supplies. But she never received any reimbursement for them. Based on her best recollection, she spent about $300.00 purchasing cleaning supplies.

68.    During her employment, Sterling was required to clean four Chase Bank branches from Monday to Saturday. The branch locations include: (1) 67 Lafayette Ave, Suffern, NY 10901; (2) 1 S Airmont Rd, Tallman, NY 10982; (3) 501 Chestnut Ridge Rd, Chestnut Ridge, NY 10977; and (4) 410 NY-59, Monsey, NY 10952. On average, she worked from between 6:00 p.m. and 7:00 p.m. to about 11:00 p.m. However, based on her best recollection, she was compensated about 22 hours per week, while she actually worked about 27 hours per week. During her employment, Sterling was paid at an hourly rate of $12.00 multiplied by 22 hours per week, amounting to $264 per week.

69.    Before Sterling was terminated, she repeatedly complained to her supervisor about being underpaid. However, her complaints were never addressed, and she was terminated instead.

*Plaintiff Ronald Balbuena' Employment*

70.    In the winter of 2018, Plaintiff Ronald Balbuena ("Ronald") was hired by Kenya, a manager of ABM, to work as a janitor at certain Chase Bank branches located in Rockland County, New York State. Ronald was terminated by David, a manager of ABM, on June 4, 2020.

71.    During his employment, Ronald's job duties consisted of taking out trash, sweeping and mopping floors, cleaning bathrooms, vacuuming, and cleaning windows and furniture. Ronald was directly supervised by Kenya, and later around May 2020, was directly supervised by David, the manager of ABM.

72.     During his employment, Ronald was not given fixed start and end times for his work shifts. Instead, he was instructed by Kenya that he could start cleaning at any time after the bank branches closed. He was given keys to the bank branches that he needed to clean and would enter the bank branches around 6:00 p.m. and start cleaning.

73.     During his employment, Ronald had to drive to different Chase Bank branches on each workday, since he was required by ABM to clean different bank branches. He spent about $50.00 per week on gas and other car-related expenses, but he never received any reimbursement for these expenses. Occasionally, he had to purchase cleaning supplies to perform job duties, and never received any reimbursement.

74.     During his employment, Ronald was required to clean three Chase Bank branches from Monday to Saturday. The branch locations included: (1) 58 W Ramapo Rd, Garnerville, NY 10923; (2) 1581 US-202 Ste 2, Pomona, NY 10970; and (3) 22 S Liberty Dr, Stony Point, NY 10980. On average, he worked from 6:00 p.m. to between 10:00 p.m. and 11:00 p.m. However, based on his best recollection, he was compensated about $218.00 per week.

75.     Before Ronald was terminated, he repeatedly complained to his supervisor that he was not paid for all the hours he worked, and never received any pay stubs. However, his complaints were never addressed, and he was terminated instead.

***Defendants' Unlawful Time and Wage Records Keeping Policy***

76.     Before 2019, Defendants failed to set up a clock system, and Plaintiffs were unable to clock in and clock out to track their work hours.

77.     At some point in 2019, Defendants instituted a clocking in and out method. Plaintiffs were expected to call a given phone number from the bank branches. They would receive a code over the phone, and then they would enter the code to clock in and out.

78.     Upon information and belief, Defendants failed to maintain accurate and sufficient

time records for Plaintiffs.

79.     At all relevant times, Defendants did not furnish Plaintiffs with an accurate statement with every payment of wages, listing gross wages, deductions and net wages as required by NYLL § 195. Defendants also failed to provide wage notices to the Plaintiffs as required by NYLL § 195.

***Defendants' Unlawful Payroll Practice Policy***

80.     Outwardly, Plaintiffs were hired on an hourly basis by Defendants to work as janitors.

81.     However, Defendants allocated a certain amount of time to clean each bank. But it was nearly impossible to accomplish this in the time allocated. Plaintiffs were paid a flat rate per week even if the Plaintiffs worked more than the hours allocated to clean each location. In sum, if Plaintiffs were sent to clean a site or do some other tasks on that site, Defendants paid them for the fixed number of hours allocated by Defendants, regardless of the actual time required for Plaintiffs to perform their job duties.

82.     At all relevant times, Plaintiffs were consistently paid far below the New York State minimum wage rate, and sometimes below the Federal minimum wage rate.

83.     At all relevant times, Plaintiffs were never paid any overtime wages for hours worked in excess of forty per week.

84.     At no point did Defendants inform Plaintiffs of the minimum wage and overtime wage provisions of the FLSA or NYLL.

85.     Defendants knowingly and willfully operated their business with a policy of not properly paying Plaintiffs and other similarly situated employees the FLSA minimum wage, the New York State minimum wage, the FLSA overtime rate (of time and one-half), and the New York State overtime rate (of time and one-half), in direct violation of the FLSA and NYLL and the supporting federal and state regulations.

86.     Defendants failed to display, in a place accessible to employees and in a visually

conspicuous manner, the notices of employee rights to receive the minimum wage and overtime pay at a rate of one and one-half times their regular rate as required under the NYLL.

***Defendants' Unlawful Retaliation against Plaintiffs***

87.     At all relevant times, Plaintiffs had repeatedly mentioned several times that they were not being compensated for the hours that they worked and eventually the employers retaliated against Plaintiffs by firing them and replacing them with someone else.

88.     This fits into the practice of the employers systematically underpaying their employees and then replacing them when they complain about being underpaid.

## COLLECTIVE ACTION ALLEGATIONS

89.     Plaintiffs bring this action individually and as the class representatives on behalf of the "Proposed FLSA Collective" defined as:

> All current and former employees who worked as janitors and were paid at an hourly rate multiplied by the hours allocated by Defendants during the three-year period prior to the filing of the complaint (hereinafter the "FLSA Class").

90.     Upon information and belief, the total number of members of the proposed collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty (50) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

91.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment

law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

92.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

93.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, in as much as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

94.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

> (1) Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;
>
> (2) Whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Collective Action Members;
>
> (3) What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

(4) Whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and,

(5) Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

(6) Whether Defendants failed to pay Plaintiffs and the Collective Action Members minimum wages for all hours worked; and

(7) Whether Defendants failed to pay Plaintiffs and the Collective Action Members for hours worked in excess of 40 hours per workweek.

95.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

96.    Plaintiffs and the FLSA class have been substantially damaged by Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

97.    In addition to bringing this action as a proposed collective action to remedy violations of the FLSA, Plaintiffs also bring this action on behalf of a Proposed Rule 23 Class, under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and consisting of:

All current and former employees who worked as janitors and were paid at an hourly-rate multiplied by the hours allocated by Defendants during the six-year period prior to the filing of the complaint (hereinafter, the "NYLL Class").

98.    Upon information and belief, the persons in the Proposed Class are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of Defendants, the Proposed Class consists of all non- managerial current and

former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

99.     The claims of Plaintiffs are typical of the claims of the Proposed Class, and a Rule 23 class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

100.    Defendants have acted on grounds generally applicable to the Proposed Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Proposed Class as a whole.

101.    Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

102.    Plaintiffs will fairly and adequately protect the interests of the Proposed Class. Plaintiffs understand that, as the class representatives, they assume a fiduciary responsibility to the Class Members to represent their interests fairly and adequately, and that they must consider their interests just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class Members.

103.    Plaintiffs recognize that any resolution of a Rule 23 class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and that they may be called upon to testify in depositions and at trial.

104.    Plaintiffs have the same interests in this matter as all other members of the Proposed Class, and Plaintiffs' claims are typical of the Proposed Class.

105.    There are questions of law and fact common to the Proposed Class which predominate

over any questions solely affecting the individual members of the Proposed Class, including but not limited to:

(1) Whether Defendants employed Plaintiffs and the Class members within the meaning of the NYLL;

(2) Whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class members;

(3) What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

(4) Whether Defendants failed to pay Plaintiffs and the Class members the applicable minimum wage for all straight time hours worked and the required overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the NYLL and the regulations and promulgated thereunder;

(5) Whether Defendants' violations of the NYLL are willful as that term is used within the context of the NYLL; and,

(6) Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs, attorneys' fees, and costs and disbursements.

## STATEMENT OF CLAIMS

### COUNT I: FLSA – Unpaid Minimum, and Overtime Wages
*Brought on behalf of Plaintiffs and the Proposed FLSA Collective*

106. Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

107. Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

108.    At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and the Proposed FLSA Collective members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

109.    At all relevant times, Defendants employed Plaintiffs and the Proposed FLSA Collective members within the meaning of the FLSA.

110.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

111.    Plaintiffs and the Proposed FLSA Collective members were entitled to be paid at the applicable minimum wage for all hours worked.

112.    Defendants failed to pay Plaintiffs and the Proposed FLSA Collective members minimum wages in the lawful amount for all hours worked.

113.    Plaintiffs and the Proposed FLSA Collective members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

114.    Defendants failed to pay Plaintiffs and the Proposed FLSA Collective members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

115.    At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and the Proposed FLSA Collective members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a).

116.    Defendants have a policy that they knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Proposed FLSA Collective members at the statutory minimum wage, and overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wage and overtime compensation would financially injure Plaintiffs and the Proposed FLSA Collective.

117.    Defendants failed to properly disclose or apprise Plaintiffs and the Proposed FLSA Collective members of their rights under the FLSA.

118.    As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Proposed FLSA Collective members are entitled to liquidated damages pursuant to the FLSA.

119.    Due to reckless, willful and unlawful acts of Defendants, Plaintiffs and the Proposed FLSA Collective members suffered damages in an amount not presently ascertainable of unpaid minimum wages, overtime wages, and an equal amount as liquidated damages, and prejudgment interest thereon.

120.    Plaintiffs and the Proposed FLSA Collective members are entitled to an award of their reasonable attorneys' fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

### COUNT II: NYLL – Unpaid Minimum, and Overtime Wages
***Brought on behalf of Plaintiffs and the Proposed Rule 23 Class***

121.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

122.    Defendants employed Plaintiffs and the Rule 23 Proposed Class members within the meaning of NYLL §§ 2 and 651.

123.    Defendants knowingly and willfully violated the rights of Plaintiffs and the Rule 23 Proposed Class members by failing to pay Plaintiffs and the Rule 23 Proposed Class members the

applicable minimum wage for all straight time hours worked, and required overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

124.    Defendants' violations of the NYLL, as described, were willful and intentional.

125.    Defendants failed to properly disclose or apprise Plaintiffs and the Rule 23 Proposed Class members of their rights under the NYLL.

126.    Due to the Defendants' NYLL violations, Plaintiffs and the Rule 23 Proposed Class members are entitled to recover from Defendants the difference between their actual wages and the amounts owed under the NYLL. The deficiency accounts for minimum wage for all straight time hours, overtime compensation for all overtime hours, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL §§ 663(1), 198.

**COUNT III: NYLL - Annual Wage Notice and Periodic Wage Statements**
***Brought on behalf of Plaintiffs and the Proposed Rule 23 Class***

127.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

128.    Defendants have willfully failed to supply Plaintiffs and the members of the Rule 23 Class with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs and the members of the Rule 23 Class as their primary language, containing Plaintiffs' and the members of the Rule 23 Class' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

129.    Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

130.    Defendants have willfully failed to supply Plaintiff and the members of the Rule 23 Class with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

131.    Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

132.    Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs and the members of the Rule 23 Class are each entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with wage notices, or a total of five thousand dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

133.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of NYLL § 661.

134.    Defendants failed to establish, maintain, and preserve for not less than six (6) years

payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the NYLL § 194(4), and New York State Department of Labor Regulations § 146-2.1.

135.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs and the members of the Rule 23 Class are each entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide Plaintiffs and the members of the Rule 23 Class with accurate wage statements, or a total of five thousand dollars, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### COUNT IV: NYLL - Failure to Timely Pay Wages
*Brought on behalf of Plaintiffs and the Proposed Rule 23 Class*

136.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

137.    Defendants did not timely pay Plaintiffs in full for all hours worked at their agreed-upon rate of pay, in violation of NYLL §191.

138.    Defendants are liable to Plaintiffs in an amount to be determined at trial.

### COUNT V: FLSA and NYLL – Retaliation
*Brought on behalf of Plaintiffs*

139.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

140.    Defendants violated 29 U.S.C § 215(a)(3) when they terminated Plaintiffs' employment in retaliation after they raised concerns to Defendants about being underpaid.

141.    Defendants are therefore liable to Plaintiffs for damages under 29 U.S.C. § 216(b).

142.    Defendants are also liable for this conduct under New York State's retaliation law, specifically NYLL § 215 (1)(a) and NYLL § 215(2)(a).

### COUNT VI: Unjust Enrichment

*Brought on behalf of Plaintiffs*

143.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

144.    At all relevant times, Plaintiffs had to drive to different Chase Bank branches on each workday, since they were required by Defendants to clean different bank branches. However, Plaintiffs never received any reimbursement for car-related expenses. Nor were Plaintiffs compensated for the time spent traveling to different bank branch locations to perform job duties.

145.    At all relevant times, Plaintiffs were not provided with cleaning supplies, and they needed to purchase cleaning supplies and equipment.  However, Plaintiffs never received any reimbursement for these expenses.

146.    It is inequitable and unjust for Defendants to reap the benefits of Plaintiffs' efforts, which include unreimbursed expenses. Plaintiffs are entitled to relief for Defendants' unjust enrichment in an amount equal to the benefits unjustly retained by Defendants, plus interest on these amounts.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, Adalinda Garcia, Levis Barrientos, Jonathan Barrientos, Sterling Barrientos, and Ronald Balbuena, on behalf of themselves and all similarly situated Collective Action members and Class members, respectfully request that this Court grant the following relief:

i.    That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, who worked as janitors and were paid at an hourly-rate multiplied by the hours allocated by Defendants, and of their right to join this lawsuit if they belief they were denied proper

wages;

ii.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

iii.     Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

iv.     An award for unpaid minimum wage and unpaid overtime compensation due under the FLSA and NYLL;

v.     An award of liquidated damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

vi.     An award of liquidated damages as a result of Defendants' failure to pay minimum wage compensation, and overtime compensation pursuant to the NYLL and the New York State Wage Theft Prevention Act;

vii.     An award of compensatory damages as a result of Defendants' retaliatory termination against Plaintiff;

viii.     An award of civil penalties pursuant to the New York State Wage Theft Prevention Act;

ix.     An injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL;

x.     An award of the amounts by which Defendants were unjustly enriched as a result of Defendants' failure to reimburse Plaintiffs for car-related expenses, and cleaning supplies and equipment expenses.

xi.     An award of prejudgment and post-judgment interest;

xii.     An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. 216(b) and the NYLL; and

xiii.    Such other and further relief as this Court determines to be just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated: New York, New York
      December 1, 2021

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____

Mohammed Gangat, Esq.
675 3rd Avenue, Suite 1810
New York, NY 10017
(718) 669-0714
mgangat@gangatllc.com

*Attorneys for Plaintiffs and the FLSA*
*Proposed Collective and Rule 23 Proposed*
*Class*